Madam Clerk, will you please call the first case? 12-19-72, Peoples v. Bernard Brooks. Okay, I'd like the attorneys to step up to the podium. I want you to tell me your names, who you represent, and approximately how long your argument will take. Good morning, Counsel. Good morning, Your Honor. My name is Gilbert Lenz from the Office of the State Appellate Defender, and I'm representing Bernard Brooks. I don't anticipate my argument lasting more than 10 minutes. Okay, very good. Good morning, Counsel. Good morning. Assistant State's Attorney Andrea v. Salone for the People. I'd like to request about 15 minutes. Very good. Thank you. Okay, Mr. Lenz, you want to proceed with your argument? Yes, thank you, Your Honor. Again, Gilbert Lenz for Bernard Brooks. Your Honors, Bernard Brooks is currently serving a prison term of 10 years for taking an umbrella and a bottle of lotion from a car that was completely totaled. This car was an utter wreck. It had been left on the street for multiple days with no windows after it had been wrapped around a pole and was completely inoperable. Now, Mr. Brooks has raised four issues in this appeal, and I'm happy to discuss any of those arguments that this Court wishes to discuss. However, I'd like to focus this morning on Arguments 1 and 2 concerning the sufficiency of the evidence of the mental state element and counsel's ineffectiveness. Your Honors, in order to prove Bernard Brooks guilty of burglary, the State had to prove beyond a reasonable doubt that he intended to commit a theft when he reached into that car. That is, the State had to prove that he knowingly intended to deprive an owner of those items. Again, in other words, the State had to prove beyond a reasonable doubt that he was consciously aware that someone owned that umbrella and that bottle of lotion. This is a subjective standard, where a defendant has a bona fide belief that the items that he took were abandoned, that negatives the intent required to prove theft and thus also required to prove burglary.  Normally, these cases involving the mental state for theft or burglary revolve entirely around circumstantial evidence. However, in this case, we also have direct evidence, and that direct evidence is exculpatory. My client gave a statement to the police immediately after he was Mirandized saying that he took those items believing that they were abandoned. That alone is negatives the intent for burglary. However... Was the owner of the car able to say that the lotion was in the car? Did she ever identify the lotion as hers? She actually couldn't remember if she left a bottle of lotion in the car. She didn't remember leaving the umbrella in the car. She said that the car was so wrecked, there was so much broken glass inside the interior, that it wasn't worth it to her to retrieve these items from the back seat. And she then left those items exposed in the back seat to anyone who walked by for multiple days. Why can't I draw an inference from the fact that Mr. Brooks had recently stolen property in his possession? Why can't I infer intent from that? Well, the law is clear, Your Honor, on that. The possession of recently stolen property is not enough to prove intent. There has to be evidence... Well, where there's evidence in the record to explain, to contradict the intent for burglary, that negates the mental state required for theft. The key here is that the state had to prove that this is a specific intent crime. The state had to prove that my client, when he reached into the car, was consciously aware that someone owned those items and was intending to deprive that owner of those items permanently. The fact that he had possession of those items, as the case law is clear, is insufficient to prove burglary. But Mr. Brooks didn't own that car, did he? No, he didn't own that car. But every time that someone takes items from someone else's, or goes on to another person's property to retrieve items that he believes are abandoned, he's entering someone else's property. That was true in Morissette in the U.S. Supreme Court case when the defendant said he was consciously aware that he was going onto government property where it said, you know, no entry, and taking these items that he believed they were abandoned. The key here is that where there's evidence of a defendant's explanation of his mental state when he took the items, that's an important factor in determining from all the circumstances whether he had the mental state for burglary. But we don't... Is there a threshold necessary when a defendant says, I thought these items were abandoned? Before the burden shifts to the State to disprove that defense beyond a reasonable doubt, is there any threshold element of, was the defendant's belief reasonable? Well, the defendant has to have a bona fide belief. It is subject to standards. So it's not a reasonableness standard. But there has to be... If the trier of fact believes that the defendant had a bona fide belief from his statement that items were abandoned, then that negative is the intent. And then you can look to what we usually have to look to in these cases, the circumstantial evidence. And almost all of the circumstantial evidence in this case supports Mr. Brooks's statement that he believed those items were abandoned. Primarily, that's the condition of the car. This car, as I said, was an utter wreck. The owner actually practically admitted on the stand that she abandoned those items in the backseat because it wasn't worth it to her to retrieve those among all the broken glass in the interior of the car. So without applying a reasonableness standard, we can still look to my client's subjective belief as supported by the circumstantial evidence. And no reasonable trier of fact could have found that he intended to deprive an owner permanently of these items. But your position ultimately is the state bore the burden of proof on that. Yes, absolutely. They had to prove beyond a reasonable doubt that he intended to deprive an owner of those items. And that also overlaps with the second argument, which is the mistake of fact offense. The mistake of fact offense was inherent in the state's evidence. And as Justice Mason, as you said, the state had a burden to disprove beyond a reasonable doubt that mistake of fact. Now, this court can reach that issue as part of the reasonable doubt claim under 1B. But we're also arguing that because this mistake of fact was inherent in the state's evidence, counsel had a duty to identify that affirmative defense and present it to the trial court and clarify it in argument, clarify the exact issue for the court. Counsel, by this record, apparently had no idea that this affirmative defense was available, didn't raise it before the trial judge, didn't present it in argument. Now, that might not be prejudicial in some circumstances where the judge might know that the affirmative defense is in front of him or her. But here, the record is also silent on that. There's no indication that this trial judge knew that this affirmative defense was presented from the evidence. There's certainly a reasonable probability that had counsel presented this argument to the trial judge, that the result would have been different because the state would have had that additional burden to disprove beyond a reasonable doubt Bernard Brooks' state of belief that those items were abandoned. I'll just point to two other items on the reasonable doubt argument. When we're looking at the circumstantial evidence, almost all the circumstantial evidence in this case supports Brooks' state of belief. I would also point the court to the circumstantial evidence that wasn't presented in this case. First, there was no forced entry. This is a key factor that divides Mr. Brooks' case and his cited authorities from the state's cases. Every one of the state's cases involves someone who broke into someone else's property to either retrieve items or presumably retrieve items. All the cases we have on our side in Mr. Brooks' case, there was no forced entry into the car or the property involved. And finally, there was no flight and no hiding. Contrary to the state's assertion, Bernard Brooks did not flee the scene. Officer Olivares saw him walking down the sidewalk alone, not doing anything illegal, not doing anything suspicious. Because his good friend, Brandon Booker, pointed him out. Oh, yes. Mr. Brandon did say that he was with my client, although I believe that particular testimony was not admitted against my client. But yes, Your Honor, that's right. So he did not run away from the police. He did not try to hide himself. He did not try to hide the evidence. He did not give evasive answers. All those factors are present in the state's case where the convictions were affirmed. None of those factors are present here. None of those factors are present in our cited authorities. For those reasons, Your Honor, if there are no further questions, I would, Bernard Brooks would respect the request that this court reverse his conviction. And the alternative, reverse remand for new trial, and a further alternative, reduce his sentence. Thank you very much, Your Honors. Thank you, Mr. Salong. Ms. Salong. Good morning. Once again, Assistant State's Attorney Andrea V. Salong for the People. Under the Jackson Standard, on a challenge to the sufficiency of the evidence, the relevant question is whether after reviewing the evidence in the light most favorable to the people, any rational trier of facts could have found defendant guilty of burglary beyond a reasonable doubt. In this case, the people have met their burden to show that defendant did commit a crime. Indeed, burglarized the victim, Oteria Webster's car, as it sat on a residential block in late April of 2011. What is the evidence that negates the defendant's state of mind? Where he says, I thought this car was abandoned. Everything in it was abandoned. Justice Mason, the defendant's intent was proven by the people circumstantially and directly. First, directly when he says, I admit I took these items. They were not mine. He said that to Officer Perez back at the station. And then circumstantially, it was 11.15 at night. Under the cover of night, defendant had these items. He admitted the things were not his. As he was walking down the block and Officer Olivares approached him for a field interview, he dropped these items. Not coincidentally, he maintained his grip onto a CD player, which later, he said at the station, was his item. So that means he only dropped the items that were not his, that were from the victim, Oteria Webster's car, out of consciousness of guilt. In an effort to- Where's the evidence that disproves, beyond a reasonable doubt, that at the time he reached into the car with all its windows broken and the glass all over the interior of the car, that he did not believe the car was abandoned? The evidence that showed that he didn't believe that the car was abandoned is mostly circumstantial evidence. That the trial court heard during the trial from the testimony of the officers and from the victims, from the victim, and was able to make a determination that defendant's statement to the officer at the station was not credible. And if you listen to all of the evidence that was presented, such as the time of night it was, the fact that the defendant lived within three or four blocks of this, that the neighbors called this in as a burglary in process, that the police were responding to a call of a burglary in process, that the car was a 2001 Lexus. It wasn't some junk car hooptie on the street. It was a woman's property. Because it was totaled with every square inch of glass shattered. And because the windows were displaced or knocked out, doesn't mean that she abandoned the car. She herself said, I had the car towed to in front of my sister's house, that I watched it as I came and went until I could have it repaired. I was in the process of trying to have it moved to be able to have it repaired. This was on April 24, close to the end of the month. Defendant would have this court place a value on this woman's property that's sitting on the street because it's not in pristine condition. But the statute, the burglary statute, doesn't have a value limitation or a minimum. Just because for some people, this might not have been worth much, doesn't mean that it wasn't against the law to enter this car and take items that didn't belong to the defendant. And we know that he knew they didn't belong to him because he admitted it at the station. And then later, just the circumstances under which he took it, again, at night, off of a residential street.  called it in and said, there's a burglary in process, didn't believe that it was an abandoned vehicle. Well, how does that prove that he didn't believe it was abandoned? Because the trial court came to the decision that he could not have believed it was an abandoned vehicle because all these other people didn't believe it was an abandoned vehicle. Not the victim herself, not her sister. Everybody has to have the same belief. No, it's just a rational person would not believe that the car was abandoned. The defendant says Peoples v. Morrissette provides support for his position. How would you distinguish that case from the facts of our case and explain to this court why we shouldn't follow the rules set forth in that case? I'm sorry, I'm not familiar with it. You're not? No. That's OK. Proceed. As to the ineffective assistant counsel claim, an appellate defense attorney would have this court believe that because the trial counsel did not raise a mistake of fact as an affirmative defense, that he didn't raise it, which is not true at all. He raised it in his closing. So the trial court did hear the mistake of fact argument from the trial defense attorney. He considered it, and he rejected it. And how do we know he rejected it? Because he found defendant guilty of burglary. But defense counsel never articulated the position that counsel on appeal takes. And that is that it was the state's burden to prove the lack of the mistake of fact, the lack of a belief that the vehicle was abandoned beyond a reasonable doubt. They never made that argument. Yes, Justice Mason, you're correct. However, by arguing during his closing that there was a mistake of fact, he didn't have to elaborate on it because the trial court is presumed to know and follow the law. So the trial court is presumed to know that then the burden would shift. So that was presented at trial, and it was considered, and it was rejected. The people met every element of this crime beyond a reasonable doubt. That the defendant, without authority, as we heard from the victim, entered the car with the intent, which was proven circumstantially, to commit a theft. With regards to, further regards to his intent, we know that in addition to the neighbor's calling and a burglary in process, that even though the car didn't have its windows, and Ms. Webster didn't retrieve her items from the car because it wasn't worth it at the time, not meaning that the car wasn't worth it or that the items weren't worth it, but any rational trier of fact can come to the conclusion that she meant it wasn't worth reaching her hand in a pile of glass for, because she intended to get that car repaired later. That this car, sitting on this lovely residential block, didn't have any tickets on it. It didn't have any boots on it. It didn't have any of the signs that happens to a car when it has been abandoned. And it had only been two days, and it was at the end of the month. So further, defendant didn't meet his burden to present any photos of this car at trial. So we don't have any photos to see in what condition this was in. There are no inconsistencies. The presentation of photos wouldn't be the defendant's burden in any event, would it? They would have the burden to show on appeal that to present the photographs to sustain their assertion that the car was abandoned based on its condition. And it wasn't. All we have is her testimony and the testimony of the officers that corroborate her. And one statement from the defendant made through an officer, which was rejected by the trial court as being incredible, which is the trial court's privilege to do. Don't we also have her comment to the police? Why should I testify about a car I don't even care about? Didn't she say something like that? I don't even care about it? So the police knew that she didn't care about it. No, that was the sister. The state's attorney knew that? No, the sister. OK. The sister's statement. Anything for it? We just ask that this court affirm the conviction of the defendant for burglarizing Ms. Webster's car, as there are no inconsistencies here enough to overturn the decision of the trial court. Thank you. Thank you, Ms. Salone. Mr. Wentz, any rebuttal? Mr. Honor, I'll very briefly. And I just wanted to say, very brief on the reasonable doubt argument, that every single case that involves the taking of property involves property that did not belong to the defendant prior to the taking. That's the act involved here. But this argument is about the mental state. It's what my client believed at the time that he took those items. And his statement was that he believed the umbrella and the bottle of lotion were abandoned. Almost all of the circumstantial evidence in this case supports that state of belief. The fact that he dropped the items is minimally probative of his mental state when he reached into the car. It's almost entirely probative only of his mental state when he saw the officer approaching him moments after reaching into the car and realizing at that point that he may be now in trouble for that. And finally, on the ineffectiveness argument, just one comment. Counsel did not raise a mistake of fact defense. Mistake of fact is a codified affirmative defense that when raised, when properly raised, must be rebutted beyond a reasonable doubt by the state. Counsel here did not do that. That's what counsel is ineffective for in Lemke. And that's what counsel is ineffective for here. Thank you, Your Honor. If there are no further questions. Thank you, Mr. Lentz. Mr. Lentz, Ms. Salone, the court would like to thank you for your arguments and your briefs. This matter will be taken under advisement.